**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL COOK, JOSEPH HOLMES, | ) | |
| CORTNEY JONES, OLIVIA JONES, and | ) | |
| TRISTAN SUMPTER, | ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| GOLUB & COMPANY REALTY, LLC, and | ) | |
| GOLUB & COMPANY, LLC, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs, ANGEL COOK, JOSEPH HOLMES, CORTNEY JONES, OLIVIA JONES, and TRISTAN SUMPTER (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys, Blaise & Nitschke, P.C., and for their Complaint against Defendants, GOLUB & COMPANY REALTY, LLC and GOLUB & COMPANY, LLC (hereinafter collectively referred to as "Golub" or "Defendants"). Through personal information and belief, Plaintiffs state the following:

## PARTIES

1.     Plaintiff ANGEL COOK is an individual, and at all times mentioned in this Complaint, was domiciled in Cook County, Illinois.

2.     Plaintiff JOSEPH HOLMES is an individual, and at all times mentioned in this Complaint, was domiciled in Cook County, Illinois.

3.     Plaintiff CORTNEY JONES is an individual, and at all times mentioned in this Complaint, was domiciled in Cook County, Illinois.

4.     Plaintiff OLIVIA JONES is an individual, and at all times mentioned in this Complaint, was domiciled in Cook County, Illinois.

5.     Plaintiff TRISTAN SUMPTER is an individual, and at all times mentioned in this Complaint, was domiciled in Will County, Illinois.

6.     Defendant GOLUB & COMPANY REALTY, LLC is an Illinois Limited Liability Company that conducts business within the State of Illinois and maintains a registered agent for service of process in the State of Illinois, namely David Glickstein, 444 W. Lake Street, Suite 900 Chicago, IL 60606.

7.     Defendant GOLUB & COMPANY, LLC is an Illinois Limited Liability Company that conducts business within the State of Illinois and maintains a registered agent for service of process in the State of Illinois, namely David Glickstein, 444 W. Lake Street, Suite 900 Chicago, IL 60606.

8.     At all times herein mentioned, all Defendants, individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

9.     Each Defendant had actual and/or constructive knowledge of the acts of the other Defendant as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

11.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' claims seeking damages for violations of state law because said claims arise out of the

same case or controversy for which, as set forth above, this Court already has proper subject matter jurisdiction.

12.     This Court has personal jurisdiction over Defendants in that, among other things, Defendants do business in this Judicial District, and committed tortious acts in this Judicial District.

13.     This Court has personal jurisdiction over Plaintiffs in that Plaintiffs reside in and suffered harm in this Judicial District.

14.     Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d).

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Golub asserts in its website that it is widely recognized as one of Chicago's most dynamic and successful family businesses, Golub & Company and its affiliates are leaders in real estate development, acquisitions, investment financing, asset and property management, leasing and real estate advisory services.

16.     Golub owns, manages, and/or leases several buildings in the Chicago area, including without limitation, 1001 South State Street, Chicago, IL ("1001 South State"), and 2851 South King Drive, Chicago, IL ("Prairie Shores").

17.     Plaintiffs are African American former employees or contractors of Golub.

18.     During their employment with Golub, Plaintiffs were subjected to routine employment discrimination on the bases of race (black), color (black), and retaliation for reporting discriminatory practices.

19.     Golub routinely failed to train African Americans, including Plaintiffs, and then subjected them to higher standards than non-African American employees.

20.     Golub also failed to apprise African American employees of internal policies and

then arbitrarily took disciplinary action up to and including termination allegedly based on African American employees failing to comply with said policies.

21.     Golub has a culture of racial discrimination whereby African American employees are held to a different standard and scrutinized more heavily compared to Caucasian employees.

22.     This discriminatory culture permeates throughout the Golub organization and is exemplified by discriminatory employment practices and open prejudice towards African American residents and prospective residents of Golub properties.

23.     Golub routinely asked Plaintiffs to deal with all issues related to minority residents and prospective residents while employees and contractors of other races were not limited to any particular race.

24.     In the beginning of 2020, Golub held a party that included a 50 Years of Golub comedy skit, which included senior Caucasian Golub employees who, while dressed up as African American recording artists, including Cardi B and Run DMC, used stereotypes to turn actual African Americans into offensive caricatures.

25.     Plaintiffs were in attendance at the party and were deeply offended that senior Golub employees were all but using blackface to seemingly mock their African American culture.

26.     This party and comedy skit occurred almost immediately after Golub acquired Prairie Shores, which Golub regards as its "black property" as most of the residents are African American.

27.     Golub subjected black employees and contractors, including the Plaintiffs, with varying forms of discrimination, including but not limited to:

   a.   Verbal threats of retaliation issued to African American employees for co-worker complaints and purportedly missed performance targets, without prior

or subsequent documentation of the same;

b. Disparate treatment of employees at buildings staffed with African American workers including drastic differences in cleaning and protective measures employed during the COVID-19 pandemic and retaliation when African American workers raised concerns about the same;

c. Arbitrary termination policies implemented for African American employees requiring pandemic-related physician appointments;

d. Arbitrary termination policies implemented for African American employees with respect to security during gatherings convened in violation of pandemic health and safety protocols;

e. Violations of Golub's own articulated pandemic-related policies pertaining to employee quarantining practices and corresponding exposure to increased health and safety risks for Golub's other employees;

f. The unlawful termination of African American employees and replacing them with Caucasian employees; and

g. Attempted eviction of residents voicing legitimate security concerns.

28.     On or about the summer of 2020, Golub began systematically terminating African American employees and contractors for either minor or fabricated reasons.

29.     To "paper" its illegal practice of phasing out its African American employees, Defendants began hiring Caucasian employees – with less relevant experience – to replace Plaintiffs in direct violation of Title VII of The Civil Rights Act of 1964 and the Illinois Human Rights Act.

30.     Golub's Caucasian employees regularly delivered severely deficient work product;

however, Caucasian employees retained their positions and enjoyed increased responsibilities over time.

31.     Once Golub began terminating African American employees and contractors, the remaining African American employees and contractors observed a sharp decrease in clients as Golub sent new clients to Caucasian employees.

32.     Overall, African American Employees were held to a different standard than Caucasian employees.

33.     Golub has a policy for non-fraternization with residents, which prohibits employees from socializing with residents in Golub properties; the policy also prohibits employees and contractors from utilizing amenities at Golub properties.

34.     Golub only enforced the non-fraternization policy against African American employees and contractors, including employees and contractors who were also residents of Golub properties.

35.     Caucasian Golub employees were permitted to fraternize with residents without consequence, while African American employees and contractors were subjected to discipline and termination.

36.     Caucasian Golub employees were also able to have their family members visit and use all of the property amenities while African American employees and contractors were subjected to discipline and termination.

37.     Caucasian employees were permitted to take extended lunch breaks while African American employees were not.

**Allegations from Plaintiff Angel Cook's Perspective**

38.     On or about September 28, 2019, Plaintiff Angel Cook ("Angel"), an African

6

American female, began working for Golub as an independent contractor leasing agent and real estate broker primarily at Golub's 1001 South State property.

39.     Throughout her employment with Golub, Angel felt the weight of her Caucasian superiors' strong dislike for her.

40.     All the clients Angel received from Golub were African American despite the fact that a variety of other races required the services Angel offered to residents and potential residents of 1001 South State.

41.     The leasing manager for 1001 South State Lynn Kleinberger ("Ms. Kleinberger"), a Caucasian Golub employee, took excessive time to review Angels clients' applications, which caused delays in the application process and led to Angel losing significant business and revenue.

42.     Ms. Kleinberger processed applications submitted by Caucasian employees much faster and with seemingly far less scrutiny.

43.     Additionally, African American applicants were more frequently rejected than Caucasian applicants, even where the African American applicants wholly qualified under the standards set forth by Golub.

44.     On or about August 2019, Angel submitted an application to live at the 1001 South State property to leasing agent Tristan Sumpter, who is also a Plaintiff in this case.

45.     Ms. Kleinberger elected to manage Angel's application file rather than allowing Tristian Sumpter to process the application, which would have been Golub Policy.

46.     Ms. Kleinberger subsequently denied Angel's application to reside at 1001 South State.

47.     Ms. Kleinberger's denial of Angel's application was purportedly based on her analysis of Angel's income and credit; however, about a month later, Angel co-signed the

application of an African American client who wanted to reside at 1001 South State and that client's application was approved.

48.     A co-signer's application standard is significantly higher than that which applies during review of a basic resident application; therefore, Golub's decision to approve an application co-signed by Angel runs contrary to Ms. Kleinberger's denial of Angel's personal application.

49.     Angel subsequently applied and was approved to reside in 1001 South State; however, Golub refused to process Angel's renewal and Angel was forced to move out of the property.

50.     Angel performed her job duties in a satisfactory manner at all times while working for Golub.

51.     Despite Angel being a stellar leasing agent, Golub subjected her to increased scrutiny in all aspects of her work and gave preference to Caucasian employees and applicants.

52.     For example, on one occasion Ms. Kleinberger gave priority to a Caucasian prospective resident who was an unscheduled walk-in over Angel who had a scheduled meeting with an African American prospective resident.

53.     Ms. Kleinberger also tasked herself with questioning African American prospective residents regarding their character and fitness; however, Ms. Kleinberger did not interrogate Caucasian prospective residents.

54.     Similarly situated Caucasian employees were treated favorably on many occasions compared to non-black employees and agents.

55.     On October 5, 2020, Angel received a cease and desist letter from Golub's attorney, which accused Angel of verbally abusing and acting in an aggressive manner toward a (Caucasian) resident at 1001 South State; both allegations are patently false.

56. Golub's October 5, 2020 letter also terminated Angel's Non-Exclusive Broker Referral Agreement, which terminated Angel's ability to show units to prospective residents at 1001 South State.

57. Angel reported what she believed to be discriminatory practices perpetrated by Golub while working at 1001 South State, along with complaints she had heard from African American residents about disparate treatment, directly to and Ms. Kleinberger and Tracy Braun ("Ms. Braun"), a Caucasian Golub employee.

58. However, Ms. Braun and Ms. Kleinberger denied any wrongdoing and failed to investigate further, in some instances going so far as to state "I don't want to look at that" when offered evidence to support Angel's claims of discrimination.

59. After Angel raised her concerns to Ms. Braun and Ms. Kleinberger, the pair began heavily scrutinizing Angel and sifted through Angel's social media accounts in an attempt to find other issues they could raise against Angel.

60. During a conference call, Ms. Braun and Ms. Kleinberger advised Angel that she did not sound professional.

61. Ms. Braun and Ms. Kleinberger went on to accuse Angel of having pictures of penthouse at 1001 South State and used that accusation as a reason to stop working with Angel.

62. Angel suffered damages as a result of Defendants' unlawful and discriminatory employment practices.

63. On August 2, 2021, Angel filed a charge with the Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC") alleging that from December 2019 through August 2, 2021, Defendants subjected her to unequal terms and conditions of employment because of her race (black,) color (black), and in retaliation for making an internal

complaint of discrimination (IDHR No. 2022CF0066; EEOC No. 21BA11104).

64.    On March 28, 2022, the IDHR dismissed Angel's charge for lack of jurisdiction.

65.    The Notice of Dismissal provided Angel with the option to commence a civil action within 90 days of receipt of the Notice.

66.    Angel received the Dismissal Notice on April 8, 2022; therefore, a civil action commenced prior to July 7, 2022, should be considered timely.

**Allegations from Plaintiff Joseph Holmes' Perspective**

67.    On or about July 2019, Plaintiff Joseph Holmes ("Joseph"), an African American male, began working for Golub through his employment with Titan Security (hereinafter "Titan") and initial served as an independent contractor pool attendant at Golub's 1001 South State property.

68.    On or about September 2019, Joseph began working as an independent contractor front desk attendant also at Golub's 1001 South State property.

69.    Joseph felt the effects of racial discrimination throughout his employment at Golub.

70.    Golub failed to provide Joseph with guidance when situations arose for which there were no policies to follow.

71.    Whenever Joseph was around other African American employees, his supervisor, Nick Liaconie ("Mr. Liaconie"), a Caucasian Golub employee, would indicate that Joseph and the other African American employees were planning something behind his back.

72.    Joseph performed his job duties in a satisfactory manner at all times while working for Golub.

73.    Joseph was treated differently on many occasions compared to employees who were not African American.

74.     For example, Joseph was treated differently than Golub employees who were not African American when, on or about July 1, 2020, a resident hosted an unauthorized party at the 1001 South State.

75.     Joseph made every effort to stop the party while performing his duties at the front desk, including reaching out to Mr. Liaconie for guidance on how to handle the situation; however, Mr. Liaconie did not provide any concrete directions, nor did he assist in addressing the issue.

76.     The following day, Joseph was terminated for failing to end the party despite the fact there was no policy in place for how to respond to unauthorized parties and Joseph requested assistance from Mr. Liaconie.

77.     Joseph was informed of his termination by his supervisor at Titan who read an email written by Ms. Braun, which proffered the alleged reasons for Joseph's termination, including false allegations that the residents were fighting in the lobby with the guests of the pool party and that the guests had sexual intercourse in the pool.

78.     Ms. Braun's email also alleged that Joseph was being terminated because several residents were burned by the hot tub due to the incorrect chlorine level, which would have nothing to do with Joseph since checking chlorine levels was not part of his job duties.

79.     Ms. Braun's email concluded with "Please remove Joseph from the building" with no other explanation or reasoning.

80.     Upon information and belief, Joseph was only terminated because Golub received numerous complaints regarding the pool party, which, again, Joseph attempted to stop.

81.     Mr. Liaconie, a Caucasian male, was not terminated after the pool party nor did he suffer any adverse employment action as a result of his failure to assist Joseph.

82.     Additionally, prior to the pool party, Joseph advised Golub several times that it

would be almost impossible for him to control how many people could be in the pool or prohibit residents from bringing guests.

83.     Golub acknowledged Joseph's concerns; however, Golub failed to put any protocol or any extra coverage in place to assist Joseph restrict pool access or use.

84.     While working the front desk at 1001 South State, Joseph received numerous compliments from residents about how well he performed his job duties.

85.     Joseph also received a warning for not properly annotating a different incident despite the fact that the incident did not occur on his shift.

86.     In addition to the discriminatory practices that Golub imposed on Joseph, Joseph also observed Caucasian Golub employees acting in a discriminatory manner towards resident and prospective residents who were African American.

87.     For example, Ms. Kleinberger, Caucasian, instructed Joseph to watch an African American prospective client was on a tour of 1001 South State with Cortney Jones, who is also a Plaintiff in this case.

88.     Upon information and belief, Ms. Kleinberger racially profiled the prospective resident since Joseph did not observe any reason to watch this individual on camera.

89.     Joseph suffered damages as a result of Defendants' unlawful and discriminatory employment practices.

90.     On April 27, 2021, Joseph filed a charge with the IDHR and EEOC alleging that from September 2019 through July 3, 2020, Defendants subjected him to unequal terms and conditions of employment because of his race (black,) color (black), and in retaliation for opposing discriminatory practices (IDHR No. 2021CF1641; EEOC No. 21BA10786).

91.     On March 16, 2022, the IDHR dismissed Joseph's charge for lack of jurisdiction.

92.     The Notice of Dismissal provided Joseph with the option to commence a civil action within 90 days of receipt of the Notice.

93.     Joseph received the Dismissal Notice on March 22, 2022; therefore, a civil action commenced prior to June 21, 2022, should be considered timely.

**Allegations from Plaintiff Cortney Jones' Perspective**

94.     On or about April 9, 2019, Plaintiff Cortney Jones ("Cortney"), an African American male, began working for Golub as leasing agent primarily at Golub's 1001 South State property.

95.     Cortney was subjected to discrimination throughout his employment at Golub.

96.     When Cortney was hired, Golub informed him that he was hired because of his race (black) because Golub had been having issues with black residents.

97.     During his employment, Golub expected Cortney to handle issues with minority residents.

98.     Golub did not keep Cortney informed of new developments in policies and, as a result, Cortney was written up/disciplined while following old policies or for not following a policy that of which he was never informed.

99.     Cortney performed his job duties in a satisfactory manner at all times while working for Golub.

100.     Cortney was treated differently on many occasions compared to employees who were not African American.

101.     On or about November 2019, a 1001 South State resident asked Cortney if he and a couple of friends could use the rooftop for a small party.

102.     Since the resident was only asking for to use the space for three people, the request

did not trigger a Golub policy requiring written approval for parties on the rooftop.

103.    However, when more guests arrived and made their way to the rooftop, Cortney was forced to ask the resident and his guests to leave the rooftop as the party had now become unauthorized due to the number of guests.

104.    Even though Cortney appropriately addressed this incident pursuant to Golub policy, Golub subsequently accused Cortney of selling rooftop access for his own benefit during an impromptu meeting in the middle of Cortney giving a tour to a prospective resident.

105.    After the November 2019 incident, Golub began tracking Cortney's keycard and scrutinizing him more than Caucasian employees.

106.    On or about June 17, 2020, Golub terminated Cortney's employment.

107.    Golub alleged that Cortney was being terminated because he violated the non-fraternization policy by visiting a friend who was a resident of 1001 South State in approximately March 2020.

108.    However, Cortney was never informed of this policy and Caucasian employees, including members of management, were permitted to have friends who were residents of 1001 South State.

109.    In fact, multiple Caucasian members of Golub management, including Nikki O'Keefe (hereinafter "Ms. O'Keefe"), a Caucasian Golub employee, Ms. Braun, and Mr. Liaconie, had friends in 1001 South State who they would regularly visit with during work hours.

110.    None of these employees were terminated or disciplined for fraternizing with residents.

111.    Golub also alleged that Cortney was being terminated for multiple policy violations; however, as outlined above, Cortney was routinely disciplined on arbitrary grounds.

14

112.    In addition to the discriminatory practices Golub subjected him to, Cortney also observed Caucasian Golub employees engaging in discriminatory practices against residents and prospective residents.

113.    For example, a leasing manager for 1001 South State, Ms. O'Keefe, refused to take African American prospective residents unless they fit her standards, which included name spelling and income level.

114.    On one occasion, Cortney was attempting to track down a former resident who had a package delivered to 1001 South State and asked Mr. Liaconie whether he remembered a "Quincy Jones" to which Mr. Liaconie stated that he did not remember him, but "it sounds like a denial."

115.    Cortney was deeply offended by Mr. Liaconie's statement since Cortney's last name is also "Jones" and it seemed as if Mr. Liaconie was not only judging Quincy by his name but was also comfortable enough to share his discriminatory opinion with an African American employee with a similar name.

116.    On another occasion, Mr. Liaconie was explaining to a resident their options for getting on the red line going north and cautioned resident from going south because it can get "sketchy" – once again, referring to African American people.

117.    Cortney suffered damages as a result of Defendants' unlawful and discriminatory employment practices.

118.    On April 13, 2021, Cortney filed a charge with the IDHR and EEOC alleging that from April 2019 through April 13, 2021, Defendant Golub & Company, LLC harassed him and subjected him to unequal terms and conditions of employment because of his race (black,) color (black), and in retaliation for opposing discriminatory practices (IDHR No. 2021CF1590; EEOC

No. 21BA10746).

119. On March 25, 2022, the IDHR dismissed Cortney's charge against Defendant Golub & Company, LLC for lack of jurisdiction and lack of substantial evidence.

120. The Notice of Dismissal provided Cortney with the option to commence a civil action against Defendant Golub & Company, LLC within 90 days of receipt of the Notice.

121. Cortney received the Dismissal Notice on April 8, 2022; therefore, a civil action against Defendant Golub & Company, LLC commenced prior to July 7, 2022, should be considered timely.

122. On April 13, 2021, Cortney filed a charge with the IDHR and EEOC alleging that from April 2019 through April 13, 2021, Defendant Golub & Company Realty, LLC harassed him and subjected him to unequal terms and conditions of employment because of his race (black,) color (black), and in retaliation for opposing discriminatory practices (IDHR No. 2021CF1591; EEOC No. 21BA10747).

123. On March 23, 2022, the IDHR dismissed Cortney's charge against Defendant Golub & Company Realty, LLC for lack of jurisdiction and lack of substantial evidence.

124. The Notice of Dismissal provided Cortney with the option to commence a civil action against Defendant Golub & Company Realty, LLC within 90 days of receipt of the Notice.

125. Cortney received the Dismissal Notice on April 8, 2022; therefore, a civil action against Defendant Golub & Company Realty, LLC commenced prior to July 7, 2022, should be considered timely.

**Allegations from Plaintiff Tristan Sumpter's Perspective**

126. On or about April 15, 2019, Plaintiff Tristan Sumpter (hereinafter "Tristan"), an African American male, began working for Golub as a leasing consultant at Golub's 1001 South

16

State property.

127.    Tristan felt the effects of racial discrimination throughout his employment at Golub.

128.    Similar to Cortney, Tristan was frequently misinformed or not informed of Golub's ever-changing policies, which led to arbitrary discipline.

129.    Tristan performed his job duties in a satisfactory manner at all times while working for Golub.

130.    Tristan was treated differently on many occasions compared to employees who were not African American.

131.    Mr. Liaconie was overly concerned with Tristan and regularly directed Ms. O'Keefe and Ms. Kleinberger to monitor and micromanage Tristan.

132.    Golub constantly harassed Tristan by accusing him of acting unprofessional or for making mistakes that were not made.

133.    Golub seemed to find fault in everything Tristan did, regardless of the facts.

134.    This constant scrutiny mixed with Golub's failure to adequately train Tristan would occasionally lead to Tristan making small mistakes, which were capitalized on by Golub management to criticize Tristan's performance.

135.    Golub management, including Mr. Liaconie, also scheduled Tristan for more tours than could be completed during working hours and then criticized him for not allotting his time better.

136.    Non-African American employees were not subjected to this level of scrutiny nor were they held to such a heightened standard by Golub management.

137.    Tristan filed a separate EEOC charge (EEOC No. 440-2020-02382) in approximately January 2020 alleging the Golub had subjected him to discrimination on the bases

of race (black) and color (black); however, he did not pursue that case to completion.

138.     In approximately April or May 2020, after filing his first IDHR and EEOC charge, Tristan attempted to talk to Meredith Lewis ("Ms. Lewis") of Golub's Human Resources ("HR"), about the way he was being treated and the discrimination he faced.

139.     However, Ms. Lewis failed to act and instead of taking Mr. Sumpter's allegations seriously, she called him a liar.

140.     On or about late Summer or early Fall 2020, Tristan took time off pursuant to the Family and Medical Leave Act ("FMLA") after the birth of his child.

141.     When Tristan spoke to Ms. Braun about the birth of his child and his intent to invoke FMLA, Ms. Braun stated that men should not need as much time as women for parental leave.

142.     On September 23, 2020, while Tristan was on FMLA leave after the birth of his child, Golub terminated Tristan's employment.

143.     Golub alleges that Tristan was terminated for promoting himself as a broker, which was a complete fabrication, and for violating Golub's fraternization policy based on events that occurred approximately six months earlier.

144.     Similar to Cortney, Golub had not communicated that fraternization policy to Tristan nor had Golub enforced the policy been against non-African American Golub employees, including Caucasian members of management.

145.     Tristan has suffered damages as a result of Golub's unlawful and discriminatory practices.

146.     On July 9, 2021, Tristan filed a charge with the IDHR and EEOC alleging that from April 15, 2019, through September 23, 2020, Defendants subjected him to unequal terms and

conditions of employment because of his race (black,) color (black), and in retaliation for making a complaint of discrimination (IDHR No. 2022CF0009; EEOC No. 21BA11035).

147.    On March 15, 2022, the IDHR dismissed Tristan's charge for lack of jurisdiction and lack of substantial evidence.

148.    The Notice of Dismissal provided Tristan with the option to commence a civil action within 90 days of receipt of the Notice.

149.    Tristan received the Dismissal Notice on March 22, 2022; therefore, a civil action commenced prior to June 21, 2022, should be considered timely.

**Allegations from Plaintiff Olivia Jones' Perspective**

150.    On or about November 27, 2018, Plaintiff Olivia Jones ("Olivia"), an African American female, began working for Golub as a property coordinator at Golub's Marquee Block Thirty-Seven property and later as a floating leasing consultant for multiple Golub properties.

151.    Olivia felt the effects of racial discrimination throughout her employment at Golub.

152.    Olivia performed her job duties in a satisfactory manner at all times while working for Golub.

153.    Olivia was treated differently on many occasions compared to employees who were not African American.

154.    On or about the summer of 2019, Olivia began working as a property coordinator at Golub's Wicker Park Assets property.

155.    While in that role, Golub routinely required Olivia to complete work outside of her job duties, including tasks that would have typically fallen on a Property Manager or Leasing Agent.

156.    Golub seemingly expected Olivia to work as a solo landlord even though other

employees were responsible for much of the work Olivia was doing.

157.    After being overworked for months, Olivia began looking for employment at a different real estate company.

158.    However, when Olivia tried to leave Golub to accept a position elsewhere, Golub contacted Olivia's prospective employer and asserted that Olivia was subject to a non-compete; the other company subsequently rescinded its offer.

159.    Olivia had not signed a non-compete agreement with Golub and other Caucasian Golub employees had been permitted to leave Golub to accept offers at other real estate companies that directly compete with Golub.

160.    Olivia expressed her frustration to Golub over its discriminatory interference with her accepting new employment and Golub offered her lower paying positions elsewhere in the company.

161.    When Olivia refused to take a lower paying position, Golub offered her a slightly better position at its Prairie Shores property.

162.    In offering Olivia this position, Golub stated that it needed an African American at that property to deal with residents who were predominately African American.

163.    Olivia found it offensive that she was only being offered the position so she could deal with other African Americans and not for her proven abilities and experience, but she accepted the job anyways because it was indeed a slightly better position than she held at the Wicker Park property.

164.    On or about March 2020, Olivia began working as an Assistant Property Manager at Golub's Prairie Shores property.

165.    Unfortunately, changing locations and job titles did not alleviate Olivia from

Golub's discriminatory practices.

166.    In fact, almost immediately after beginning her work at Prairie Shores, Olivia was disciplined by the property manager, Bonnie Wu (hereinafter "Ms. Wu"), an Asian Golub employee, for a misunderstanding regarding vacation days.

167.    When Olivia began working at Prairie Shores, other African American employees welcomed her to what they called the "ship" (meaning slave ship) and warned her of the hostile work environment created by Ms. Wu.

168.    Ms. Wu routinely harassed the Olivia and other African American members of Prairie Shores' management team regarding the way they spoke and the way they dressed.

169.    Ms. Wu also intentionally made workloads unmanageable for Olivia and other African Americans on the management team.

170.    Ms. Wu also set arbitrary professionalism standards for African American employees that she admittedly based on personal preferences and not Golub policy.

171.    Olivia reported Ms. Wu's behavior to Golub's Regional Manager, Claire Eberts (hereinafter "Ms. Eberts"), who stated that she had received similar complaints about Ms. Wu in the past.

172.    Olivia also reported Ms. Wu's behavior to Ms. Lewis at Golub's HR.

173.    No actions were ever taken by Golub to address the numerous complaints made against Ms. Wu for discriminatory behavior.

174.    Olivia faced increased scrutiny and felt targeted after reporting Golub's and Ms. Wu's discriminatory practices to Golub HR.

175.    Furthermore, even Ms. Lewis also asserted that Olivia was being dramatic when she complained that Golub interfered with her obtaining new employment for discriminatory

reasons.

176.     On or about March 17, 2020, Olivia had contact with an individual who tested positive for COVID-19 and Olivia began exhibiting symptoms associated with the virus; Olivia subsequently visited her doctor and was diagnosed with strep throat.

177.     When Olivia attempted to request time off through Golub's COVID-19 policy, Golub forced Olivia to request time off through its usual time off policy.

178.     Golub then denied Olivia's request for time and demanded that Olivia provide a doctor's note proving her inability to work.

179.     Golub then manufactured an arbitrary deadline for when Olivia was to provide the note and terminated Olivia when a delay at her doctor's office caused her to miss the deadline by one day.

180.     Olivia's doctor contacted Golub directly to explain the delay; however, Golub refused to reinstate Olivia.

181.     Caucasian employees were afforded time off through Golub's COVID-19 policy even when not experiencing COVID-19 symptoms.

182.     For example, Ms. Wu permitted a Caucasian employee to take time off through the COVID-19 policy for a hernia repair that was in no way related to COVID-19.

183.     On or about August 4, 2020, Golub terminated Olivia's employment allegedly based on her failure to provide proof that she was unable to work after being diagnosed with strep throat.

184.     Olivia has suffered damages as a result of Golub's unlawful and discriminatory practices.

185.     On April 13, 2021, Plaintiff Olivia Jones filed a charge with the IDHR and EEOC

alleging that from April 2019 through April 13, 2021, Defendant Golub & Company, LLC harassed her and subjected her to unequal terms and conditions of employment because of her race (black,) color (black), and in retaliation for opposing discriminatory practices (IDHR No. 2021CF1878; EEOC No. 21BA10947).

186.   On March 15, 2022, the IDHR dismissed Olivia's charge for lack of jurisdiction and lack of substantial evidence.

187.   The Notice of Dismissal provided Olivia with the option to commence a civil action within 90 days of receipt of the Notice.

188.   Olivia received the Dismissal Notice on April 6, 2022; therefore, a civil action commenced prior to July 5, 2022, should be considered timely.

## COUNT I
## TITLE VII – DISCRIMINATION ON THE BASES OF RACE AND COLOR
### (Plaintiff Angel Cook v. All Defendants)

189.   Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

190.   Angel's race is black, and color is black.

191.   Defendants subjected Angel to discrimination and harassment due to her race and color.

192.   Similarly situated employees and contractors of Defendant who are not in Angel's protected class have not been and would not be treated in the same offensive manner.

193.   Because similarly situated non-black employees and contractors of Defendants have not been and were not treated in the same offensive manner, the actions of Defendants to which Angel was subjected amount to disparate treatment based on her race and color, and Angel was discriminated against under Title VII.

194.     As a result of Defendants' aforementioned discriminatory conduct, Angel has suffered injury to her career as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which she is entitled to compensatory and other damages pursuant to 42 U.S.C. § 1981a.

### COUNT II
### TITLE VII – DISCRIMINATION ON THE BASES OF RACE AND COLOR
**(Plaintiff Joseph Holmes v. All Defendants)**

195.     Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and 67 through 93 of this Complaint as if fully set forth herein.

196.     Joseph's race is black, and color is black.

197.     Defendants subjected Joseph to discrimination and harassment due to his race and color.

198.     Similarly situated employees and contractors of Defendant who are not in Joseph's protected class have not been and would not be treated in the same offensive manner.

199.     Because similarly situated non-black employees and contractors of Defendants have not been and were not treated in the same offensive manner, the actions of Defendants to which Joseph was subjected amount to disparate treatment based on his race and color, and Joseph was discriminated against under Title VII.

200.     As a result of Defendants' aforementioned discriminatory conduct, Joseph has suffered injury to his career as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which he is entitled to compensatory and other damages pursuant to 42 U.S.C. § 1981a.

### COUNT III
### TITLE VII – DISCRIMINATION ON THE BASES OF RACE AND COLOR
**(Plaintiff Cortney Jones v. All Defendants)**

201.    Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

202.    Cortney's race is black, and color is black.

203.    Defendants subjected Cortney to discrimination and harassment due to his race and color.

204.    Similarly situated employees and contractors of Defendant who are not in Cortney's protected class have not been and would not be treated in the same offensive manner.

205.    Because similarly situated non-black employees and contractors of Defendants have not been and were not treated in the same offensive manner, the actions of Defendants to which Cortney was subjected amount to disparate treatment based on his race and color, and Cortney was discriminated against under Title VII.

206.    As a result of Defendants' aforementioned discriminatory conduct, Cortney has suffered injury to his career as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which he is entitled to compensatory and other damages pursuant to 42 U.S.C. § 1981a.

## COUNT IV
## TITLE VII – DISCRIMINATION ON THE BASES OF RACE AND COLOR
### (Plaintiff Tristan Sumpter v. All Defendants)

207.    Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

208.    Tristan's race is black, and color is black.

209.    Defendants subjected Tristan to discrimination and harassment due to his race and color.

210.    Similarly situated employees and contractors of Defendant who are not in Tristan's

protected class have not been and would not be treated in the same offensive manner.

211.    Because similarly situated non-black employees and contractors of Defendants have not been and were not treated in the same offensive manner, the actions of Defendants to which Tristan was subjected amount to disparate treatment based on his race and color, and Tristan was discriminated against under Title VII.

212.    As a result of Defendants' aforementioned discriminatory conduct, Tristan has suffered injury to his career as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which he is entitled to compensatory and other damages pursuant to 42 U.S.C. § 1981a.

<u>**COUNT V**</u>
**TITLE VII – DISCRIMINATION ON THE BASES OF RACE AND COLOR**
**(Plaintiff Olivia Jones v. All Defendants)**

213.    Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

214.    Olivia's race is black, and color is black.

215.    Defendants subjected Angel to discrimination and harassment due to her race and color.

216.    Similarly situated employees and contractors of Defendant who are not in Olivia's protected class have not been and would not be treated in the same offensive manner.

217.    Because similarly situated non-black employees and contractors of Defendants have not been and were not treated in the same offensive manner, the actions of Defendants to which Olivia was subjected amount to disparate treatment based on her race and color, and Olivia was discriminated against under Title VII.

218.    As a result of Defendants' aforementioned discriminatory conduct, Olivia has

suffered injury to her career as well as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life, and other non-pecuniary losses for which she is entitled to compensatory and other damages pursuant to 42 U.S.C. § 1981a.

**COUNT VI**
**TITLE VII – HOSTILE WORK ENVIRONMENT**
**(Plaintiff Angel Cook v. All Defendants)**

219.     Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

220.     Defendants' conduct made Angel's work environment objectively and subjectively offensive, including without limitation that management employees created a climate of racial discrimination against employees, contractors, and potential and existing residents, subjected Angel to increased scrutiny, gave preferential treatment to employees outside Angel's protected class, and criticized Angel for racial aspects of her physical appearance.

221.     Defendants' harassment of Angel was based on her race (black) and color (black).

222.     Defendants' conduct was severe and pervasive.

223.     As a result of Defendants' harassment, Angel has suffered damages and respectfully requests relief from this Court, including but not limited to the following:

   a.   Compensatory damages for emotional pain and suffering;

   b.   Punitive damages;

   c.   Prejudgment interest, including any costs in bringing this suit; and

   d.   Any additional amounts this Court deems just and equitable.

**COUNT VII**
**TITLE VII – HOSTILE WORK ENVIRONMENT**
**(Plaintiff Joseph Holmes v. All Defendants)**

224.     Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and

27

67 through 93 of this Complaint as if fully set forth herein.

225.    Defendants' conduct made Joseph's work environment objectively and subjectively offensive, including without limitation that management employees created a climate of racial discrimination against employees, contractors, and potential and existing residents, subjected Joseph to increased scrutiny, gave preferential treatment to employees outside Joseph's protected class, and arbitrarily disciplined Joseph in the absence of any clear policies.

226.    Defendants' harassment of Joseph was based on his race (black) and color (black).

227.    Defendants' conduct was severe and pervasive.

228.    As a result of Defendants' harassment, Joseph has suffered damages and respectfully requests relief from this Court, including but not limited to the following:

      a.    Compensatory damages for emotional pain and suffering;

      b.    Punitive damages;

      c.    Prejudgment interest, including any costs in bringing this suit; and

      d.    Any additional amounts this Court deems just and equitable.

## COUNT VIII
### TITLE VII – HOSTILE WORK ENVIRONMENT
### (Plaintiff Cortney Jones v. All Defendants)

229.    Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

230.    Defendants' conduct made Cortney's work environment objectively and subjectively offensive, including without limitation that management employees created a climate of racial discrimination against employees, contractors, and potential and existing residents, subjected Cortney to increased scrutiny, gave preferential treatment to employees outside Cortney's protected class, and arbitrarily disciplined Cortney in the absence of any clear policies.

231.     Defendants' harassment of Cortney was based on his race (black) and color (black).

232.     Defendants' conduct was severe and pervasive.

233.     As a result of Defendants' harassment, Cortney has suffered damages and respectfully requests relief from this Court, including but not limited to the following:

      a.   Compensatory damages for emotional pain and suffering;

      b.   Punitive damages;

      c.   Prejudgment interest, including any costs in bringing this suit; and

      d.   Any additional amounts this Court deems just and equitable.

**COUNT IX**
**TITLE VII – HOSTILE WORK ENVIRONMENT**
**(Plaintiff Tristan Sumpter v. All Defendants)**

234.     Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

235.     Defendants' conduct made Tristan's work environment objectively and subjectively offensive, including without limitation that management employees created a climate of racial discrimination against employees, contractors, and potential and existing residents, subjected Tristan to increased scrutiny, gave preferential treatment to employees outside Tristan's protected class, and arbitrarily disciplined Tristan in the absence of any clear policies.

236.     Defendants' harassment of Tristan was based on his race (black) and color (black).

237.     Defendants' conduct was severe and pervasive.

238.     As a result of Defendants' harassment, Tristan has suffered damages and respectfully requests relief from this Court, including but not limited to the following:

      a.   Compensatory damages for emotional pain and suffering;

      b.   Punitive damages;

29

    c.   Prejudgment interest, including any costs in bringing this suit; and

    d.   Any additional amounts this Court deems just and equitable.

## COUNT X
### TITLE VII – HOSTILE WORK ENVIRONMENT
### (Plaintiff Olivia Jones v. All Defendants)

239.    Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

240.    Defendants' conduct made Olivia's work environment objectively and subjectively offensive, including without limitation that management employees created a climate of racial discrimination against employees, contractors, and potential and existing residents, subjected Olivia to increased scrutiny, gave preferential treatment to employees outside Olivia's protected class, and criticized Olivia for racial aspects of her physical appearance.

241.    Defendants' harassment of Olivia was based on her race (black) and color (black).

242.    Defendants' conduct was severe and pervasive.

243.    As a result of Defendants' harassment, Olivia has suffered damages and respectfully requests relief from this Court, including but not limited to the following:

    a.   Compensatory damages for emotional pain and suffering;

    b.   Punitive damages;

    c.   Prejudgment interest, including any costs in bringing this suit; and

    d.   Any additional amounts this Court deems just and equitable.

## COUNT XI
### TITLE VII – RETALIATION
### (Plaintiff Angel Cook v. All Defendants)

244.    Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

245. At all times relevant, Angel was employed by Defendants.

246. Defendants employ 15 or more employees.

247. Angel engaged in a protected activity when she reported to Defendants that she felt discriminated against on the bases of her race (black) and color (black) by Defendant's management staff.

248. Defendant not only failed to investigate Angel's allegations but subsequently subjected her to an adverse employment action by terminating her employment with Defendants' properties.

249. As a result of Defendants' retaliation, Angel lost her livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

**COUNT XII**
**TITLE VII – RETALIATION**
**(Plaintiff Joseph Holmes v. All Defendants)**

250. Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and 67 through 93 of this Complaint as if fully set forth herein.

251. At all times relevant, Joseph was employed by Defendants.

252. Defendants employ 15 or more employees.

253. Joseph engaged in a protected activity when he reported to Defendants that he felt discriminated against on the bases of his race (black) and color (black) by Defendant's management staff.

254. Defendant not only failed to investigate Joseph's allegations but subsequently subjected him to an adverse employment action by terminating his employment with Defendants' properties.

255.     As a result of Defendants' retaliation, Joseph lost his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XIII
### TITLE VII – RETALIATION
### (Plaintiff Cortney Jones v. All Defendants)

256.     Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

257.     At all times relevant, Cortney was employed by Defendants.

258.     Defendants employ 15 or more employees.

259.     Cortney engaged in a protected activity when he reported to Defendants that he felt discriminated against on the bases of his race (black) and color (black) by Defendant's management staff.

260.     Defendant not only failed to investigate Cortney's allegations but subsequently subjected him to an adverse employment action by terminating his employment.

261.     As a result of Defendants' retaliation, Cortney lost his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XIV
### TITLE VII – RETALIATION
### (Plaintiff Tristan Sumpter v. All Defendants)

262.     Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

263.     At all times relevant, Tristan was employed by Defendants.

264.     Defendants employ 15 or more employees.

265.     Tristan engaged in a protected activity when he reported to Defendants that he felt discriminated against on the bases of his race (black) and color (black) by Defendant's management staff.

266.     Defendant not only failed to investigate Tristan's allegations but subsequently subjected him to an adverse employment action by terminating his employment.

267.     As a result of Defendants' retaliation, Tristan lost his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

### COUNT XV
### TITLE VII – RETALIATION
### (Plaintiff Olivia Jones v. All Defendants)

268.     Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

269.     At all times relevant, Olivia was employed by Defendants.

270.     Defendants employ 15 or more employees.

271.     Olivia engaged in a protected activity when she reported to Defendants that she felt discriminated against on the bases of her race (black) and color (black) by Defendant's management staff.

272.     Defendant not only failed to investigate Olivia's allegations but subsequently subjected her to an adverse employment action by terminating her employment.

273.     As a result of Defendants' retaliation, Olivia lost her livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

### COUNT XVI
### TITLE VII – DISPARATE TREATMENT ON THE BASES OF RACE AND COLOR

**(Plaintiff Angel Cook v. All Defendants)**

274.     Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

275.     Angel's race is black, and color is black.

276.     At all times relevant, Angel was qualified for her position with Defendants and excelled in her role while employed by Defendants.

277.     Angel was subjected to multiple adverse employment actions, including being more heavily scrutinized by management than employees outside her protected class, being expected to deal almost exclusively with members of her protected class, being criticized about racial aspects of her physical appearance, and by Defendants terminating her employment.

278.     As a result, Angel suffered damages, including losing her livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XVII
## TITLE VII – DISPARATE TREATMENT ON THE BASES OF RACE AND COLOR
**(Plaintiff Joseph Holmes v. All Defendants)**

279.     Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and 67 through 93 of this Complaint as if fully set forth herein.

280.     Joseph's race is black, and color is black.

281.     At all times relevant, Joseph was qualified for his position with Defendants and excelled in his role while employed by Defendants.

282.     Joseph was subjected to multiple adverse employment actions, including being more heavily scrutinized by management than employees outside his protected class, being arbitrarily disciplined for conduct for which employees outside his protected class were not

disciplined, and by Defendants terminating his employment.

283.     As a result, Joseph suffered damages, including losing his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XVIII
### TITLE VII – DISPARATE TREATMENT ON THE BASES OF RACE AND COLOR
### (Plaintiff Cortney Jones v. All Defendants)

284.     Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

285.     Cortney's race is black, and color is black.

286.     At all times relevant, Cortney was qualified for his position with Defendants and excelled in his role while employed by Defendants.

287.     Cortney was subjected to multiple adverse employment actions, including being more heavily scrutinized by management than employees outside his protected class, being arbitrarily disciplined for conduct for which employees outside his protected class were not disciplined, and by Defendants terminating his employment.

288.     As a result, Cortney suffered damages, including losing his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XIX
### TITLE VII – DISPARATE TREATMENT ON THE BASES OF RACE AND COLOR
### (Plaintiff Tristan Sumpter v. All Defendants)

289.     Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

290.     Tristan's race is black, and color is black.

291.     At all times relevant, Tristan was qualified for his position with Defendants and excelled in his role while employed by Defendants.

292.     Tristan was subjected to multiple adverse employment actions, including being more heavily scrutinized by management than employees outside his protected class, being arbitrarily disciplined for conduct for which employees outside his protected class were not disciplined, and by Defendants terminating his employment.

293.     As a result, Tristan suffered damages, including losing his livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

**COUNT XX**
**TITLE VII – DISPARATE TREATMENT ON THE BASES OF RACE AND COLOR**
**(Plaintiff Olivia Jones v. All Defendants)**

294.     Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

295.     Olivia's race is black, and color is black.

296.     At all times relevant, Olivia was qualified for her position with Defendants and excelled in her role while employed by Defendants.

297.     Olivia was subjected to multiple adverse employment actions, including being more heavily scrutinized by management than employees outside her protected class, being expected to deal almost exclusively with members of her protected class, being criticized about racial aspects of her physical appearance, and by Defendants terminating her employment.

298.     As a result, Olivia suffered damages, including losing her livelihood, lost wages, lost employment benefits, and suffered from the emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XXI
### ILLINOIS HUMAN RIGHTS ACT RACE AND COLOR DISCRIMINATION
#### (Plaintiff Angel Cook v. All Defendants)

279.    Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

280.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

281.    This retaliation for asserting her right to oppose discrimination violated her rights to be free from discrimination on account of national origin, race, and/or color, in violation of 775 ILCS 5/2-102(A).

282.    Defendants, by their acts and omissions as pled in this Complaint, discriminated against Angel on the basis of her race (black) and color (black) in violation of the Illinois Human Rights Act.

283.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff has experienced injury to her career as well as emotional pain, suffering, and other non-pecuniary losses for which she is entitled to compensatory and other damages pursuant 775 ILCS 5/6-101(A).

## COUNT XXII
### ILLINOIS HUMAN RIGHTS ACT RACE AND COLOR DISCRIMINATION
#### (Plaintiff Joseph Holmes v. All Defendants)

279.    Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and 67 through 93 of this Complaint as if fully set forth herein.

280.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

281.    This retaliation for asserting his right to oppose discrimination violated his rights

to be free from discrimination on account of national origin, race, and/or color, in violation of 775 ILCS 5/2-102(A).

282.    Defendants, by their acts and omissions as pled in this Complaint, discriminated against Angel on the basis of her race (black) and color (black) in violation of the Illinois Human Rights Act.

283.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff has experienced injury to his career as well as emotional pain, suffering, and other non-pecuniary losses for which she is entitled to compensatory and other damages pursuant 775 ILCS 5/6-101(A).

### COUNT XXIII
### ILLINOIS HUMAN RIGHTS ACT RACE AND COLOR DISCRIMINATION
#### (Plaintiff Cortney Jones v. All Defendants)

284.    Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

285.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

286.    This retaliation for asserting his right to oppose discrimination violated his rights to be free from discrimination on account of national origin, race, and/or color, in violation of 775 ILCS 5/2-102(A).

287.    Defendants, by their acts and omissions as pled in this Complaint, discriminated against Cortney on the basis of his race (black) and color (black) in violation of the Illinois Human Rights Act.

288.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Cortney has experienced injury to his career as well as emotional pain, suffering, and

other non-pecuniary losses for which he is entitled to compensatory and other damages pursuant 775 ILCS 5/6-101(A).

**COUNT XXIV**
**ILLINOIS HUMAN RIGHTS ACT RACE AND COLOR DISCRIMINATION**
**(Plaintiff Tristan Sumpter v. All Defendants)**

289.    Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

290.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

291.    This retaliation for asserting his right to oppose discrimination violated his rights to be free from discrimination on account of national origin, race, and/or color, in violation of 775 ILCS 5/2-102(A).

292.    Defendants, by their acts and omissions as pled in this Complaint, discriminated against Tristan on the basis of his race (black) and color (black) in violation of the Illinois Human Rights Act.

293.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Tristan has experienced injury to his career as well as emotional pain, suffering, and other non-pecuniary losses for which he is entitled to compensatory and other damages pursuant 775 ILCS 5/6-101(A).

**COUNT XXV**
**ILLINOIS HUMAN RIGHTS ACT RACE AND COLOR DISCRIMINATION**
**(Plaintiff Olivia Jones v. All Defendants)**

294.    Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

295.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose

rights in employment have been violated.

296.    This retaliation for asserting her right to oppose discrimination violated her rights to be free from discrimination on account of national origin, race, and/or color, in violation of 775 ILCS 5/2-102(A).

297.    Defendants, by their acts and omissions as pled in this Complaint, discriminated against Olivia on the basis of her race (black) and color (black) in violation of the Illinois Human Rights Act.

298.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Olivia has experienced injury to her career as well as emotional pain, suffering, and other non-pecuniary losses for which she is entitled to compensatory and other damages pursuant 775 ILCS 5/6-101(A).

## COUNT XXVI
## RETALIATORY DISCHARGE UNDER ILLINOIS COMMON LAW
### (Plaintiff Angel Cook v. All Defendants)

284.    Plaintiff Angel Cook realleges and reincorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

285.    At all times relevant, it was the clearly mandated public policy of the State of Illinois to protect its citizens from retaliatory discharge.

286.    Defendants directly violated Title VII by unlawfully terminating Angel's employment in retaliation for Angel complaining of discrimination by management employees employed by Defendant.

287.    At all times relevant, Defendants had the duty to refrain from retaliating against Angel for reasons that violate the clear mandate of public policy in the State of Illinois.

288.    Defendants' actions were willful and wanton and in reckless disregard for the

40

lawful rights and interests of Angel.

289.   As a direct and proximate result of Defendants' retaliation, Angel lost her job, lost wages, lost employment benefits, and had actual damages resulting therefrom, and the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XXVII
## RETALIATORY DISCHARGE UNDER ILLINOIS COMMON LAW
### (Plaintiff Joseph Holmes v. All Defendants)

299.   Plaintiff Joseph Holmes realleges and reincorporates Paragraphs 1 through 37 and 67 through 93 of this Complaint as if fully set forth herein.

300.   At all times relevant, it was the clearly mandated public policy of the State of Illinois to protect its citizens from retaliatory discharge.

301.   Defendants directly violated Title VII by unlawfully terminating Joseph's employment in retaliation for Joseph complaining of discrimination by management employees employed by Defendant.

302.   At all times relevant, Defendants had the duty to refrain from retaliating against Joseph for reasons that violate the clear mandate of public policy in the State of Illinois.

303.   Defendants' actions were willful and wanton and in reckless disregard for the lawful rights and interests of Joseph.

304.   As a direct and proximate result of Defendants' retaliation, Joseph lost his job, lost wages, lost employment benefits, and had actual damages resulting therefrom, and the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XXVIII
## RETALIATORY DISCHARGE UNDER ILLINOIS COMMON LAW

**(Plaintiff Cortney Jones v. All Defendants)**

305.    Plaintiff Cortney Jones realleges and reincorporates Paragraphs 1 through 37 and 94 through 125 of this Complaint as if fully set forth herein.

306.    At all times relevant, it was the clearly mandated public policy of the State of Illinois to protect its citizens from retaliatory discharge.

307.    Defendants directly violated Title VII by unlawfully terminating Cortney's employment in retaliation for Cortney complaining of discrimination by management employees employed by Defendant.

308.    At all times relevant, Defendants had the duty to refrain from retaliating against Cortney for reasons that violate the clear mandate of public policy in the State of Illinois.

309.    Defendants' actions were willful and wanton and in reckless disregard for the lawful rights and interests of Cortney.

310.    As a direct and proximate result of Defendants' retaliation, Cortney lost his job, lost wages, lost employment benefits, and had actual damages resulting therefrom, and the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## <u>COUNT XXIX</u>
### <u>RETALIATORY DISCHARGE UNDER ILLINOIS COMMON LAW</u>
**(Plaintiff Tristan Sumpter v. All Defendants)**

311.    Plaintiff Tristan Sumpter realleges and reincorporates Paragraphs 1 through 37 and 126 through 149 of this Complaint as if fully set forth herein.

312.    At all times relevant, it was the clearly mandated public policy of the State of Illinois to protect its citizens from retaliatory discharge.

313.    Defendants directly violated Title VII by unlawfully terminating Tristan's

employment in retaliation for Tristan complaining of discrimination by management employees employed by Defendant.

314.    At all times relevant, Defendants had the duty to refrain from retaliating against Tristan for reasons that violate the clear mandate of public policy in the State of Illinois.

315.    Defendants' actions were willful and wanton and in reckless disregard for the lawful rights and interests of Tristan.

316.    As a direct and proximate result of Defendants' retaliation, Tristan lost his job, lost wages, lost employment benefits, and had actual damages resulting therefrom, and the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## COUNT XXX
### RETALIATORY DISCHARGE UNDER ILLINOIS COMMON LAW
#### (Plaintiff Olivia Jones v. All Defendants)

317.    Plaintiff Olivia Jones realleges and reincorporates Paragraphs 1 through 37 and 150 through 188 of this Complaint as if fully set forth herein.

318.    At all times relevant, it was the clearly mandated public policy of the State of Illinois to protect its citizens from retaliatory discharge.

319.    Defendants directly violated Title VII by unlawfully terminating Olivia's employment in retaliation for Olivia complaining of discrimination by management employees employed by Defendant.

320.    At all times relevant, Defendants had the duty to refrain from retaliating against Olivia for reasons that violate the clear mandate of public policy in the State of Illinois.

321.    Defendants' actions were willful and wanton and in reckless disregard for the lawful rights and interests of Olivia.

322.    As a direct and proximate result of Defendants' retaliation, Olivia lost her job, lost wages, lost employment benefits, and had actual damages resulting therefrom, and the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated or retaliated against.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, ANGEL COOK, JOSEPH HOLMES, CORTNEY JONES, OLIVIA JONES, and TRISTAN SUMPTER, by and through their attorneys, Blaise & Nitschke, P.C., pray this Honorable Court enter judgment in favor of Plaintiffs and against Defendants, in an amount to be proven at trial and such other relief as the Court deems just, proper, and equitable, including but not limited to:

A.    That the Court grant lost wages to Plaintiffs;

B.    That the Court grant Plaintiffs compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

C.    That the Court grant Plaintiffs punitive damages for Defendants' malicious and recklessly indifferent conduct;

D.    That the Court grant Plaintiffs all employment benefits they would have enjoyed had they not been discriminated and retaliated against;

E.    That the Court grant Plaintiffs expenses of litigation, including reasonably attorneys' fees, pursuant to the Title VII and/or 42 U.S.C. Section 1988 and/or 42 U.S.C. § 12101, et seq. and/or 775 ILCS 5/2-102; and/or retaliatory discharge; and

F.    Such other and further relief as this court deems appropriate.

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury on all matters so triable.

Dated: June 21, 2022

Respectfully submitted,
ANGEL COOK, JOSEPH
HOLMES, CORTNEY JONES,
OLIVIA JONES, and TRISTAN
SUMPTER

By:    /s/ *Michael T. Sanderson*
Blaise & Nitschke, P.C.
145 S. Wells Street, Suite 1800
Chicago, Illinois 60606
T: (312) 448-6602
F: (312) 803-1940
msanderson@blaisenitschkelaw.com
ARDC No. 6327542
*One of their attorneys*